IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(312)-312-1264,** WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY **013333009183120** THAT IS STORED AT PREMISES OWNED, MAINTAINED CONTROLLED AND OPERATED BY AT&T, A WIRELESS PROVIDER | Case No. 14 - 1759 WGC<br><br>~~Filed Under Seal~~ ✗ |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jesse Argueta, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **301-312-1264**, with **International Mobile Subscriber Identity Number 013333009183120** (the "Target Cell Phone"), whose service provider is **AT&T**, a wireless telephone service provider headquartered at 208 South Akard Street, Dallas, TX 75202 with a National Subpoena/Search Warrant Compliance Center at 11760 US Highway 1, North Palm Beach, FL 33408. 11760 US Highway 1, North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  I am a Special Agent with the Air Force Office of Special Investigations (AFOSI) 7th Field Investigations Squadron, Joint Base Andrews, Maryland, and having been duly sworn, affirm that the statements contained herein are true and correct to the best of my knowledge and

1



belief. The information herein was obtained from my personal observations and from statements made to me. I graduated from Argosy University, Rosslyn, Virginia in 2012 with a Master's Degree in Forensic Psychology and have been a Special Agent with AFOSI since August 2013. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program as well as the Basic Special Investigations Course with the United States Air Force Special Investigations Academy and have received basic, advanced, and on the job training in the investigation of cases involving economic crimes. As a federal agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. As part of my primary duties, I investigate violations of federal law, including 18 U.S.C. § 287, False, Fictitious or Fraudulent claims, 18 U.S.C. § 641, Theft of Public Money. I have been trained to conduct such investigations through work experience and specialized training.

3.   This Court has jurisdiction to issue the requested warrant because it is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

4.   The facts in this affidavit come from my personal knowledge, observation, information received from records, documents, and other physical evidence obtained during this investigation, as well as other information conveyed to me by other law enforcement officials. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.   Based on the facts set forth in this affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 287, False, Fictitious or Fraudulent claims and 18 U.S.C. § 641, Theft of Public Money have been committed by Pierre



Shakime ARISTIDE, 9821 Solar Course, Laurel, MD, 20723, a Major in the United States Air Force Reserves. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations 18 U.S.C. §287 and § 641.

## PROBABLE CAUSE

6.  On May 28, 2013, Defense Logistics Agency Office of the Inspector General (DLA-OIG) notified AFOSI of an anonymous letter alleging ARISTIDE misrepresented information on official travel vouchers in order to receive lodging, per diem, and travel entitlements fraudulently while activated on military orders to DLA from August 5, 2013 through December 20, 2013.

7.  ARISTIDE submitted official travel vouchers between August 5, 2013 and December 20, 2013, in which he listed 7 Nostrand Place, Hempstead, NY, ARISTIDE's home of record.

8.  Maryland Motor Vehicle Administration (MVA) documents revealed ARISTIDE submitted his New York Driver's license into the MVA for destruction and received a Maryland driver's license A-623-684-765-777 on May 30, 2013. Additionally, on May 30, 2013, ARISTIDE changed his residential address with the MVA to reflect a home address of 9821 Solar Course, Laurel, MD.

9.  A review of Maryland property and tax assessment records indicated that ARISTIDE purchased the property located at 9821 Solar Course, Laurel, MD 20723 on December 9, 2011. Moreover, a document review of the Deed of Residence to the aforementioned residential property showed ARISTIDE signed and initialed assertions to acknowledge ownership of the property and certification that it would be his primary residence. This document contains an Affidavit of Grantee as a First-time Maryland Home Buyer. The



affidavit, dated December 9, 2011, shows ARISTIDE's signature as acknowledgement under oath and penalties of perjury that he is the "Grantee" of the property and that he is a first-time Maryland home buyer (defined as an individual who has never owned in the state residential real property that has been the individual's principle place of residence) "who will occupy the property as Grantee's principle residence."

10.  ARISTIDE's voter registration profile from the Maryland State Board of Elections showed he became an active registrant on September 28, 2012. According to the Maryland voter registration application form, in order to register as a voter in Maryland, the applicant must be a Maryland resident.

11.  The investigation also revealed that prior to working at DLA, ARISTIDE was employed by the Office of Personnel Management (OPM). While employed by OPM, he applied and was granted authority to telework from an alternate worksite. The address listed and designated as his alternate worksite on the signed telework application dated February 3, 2012, was 9821 Solar Course, Laurel, MD.

12.  A Financial Crimes Enforcement Network (FinCEN) report disclosed that on May 20, 2013, ARISTIDE incorporated "A and S Solutions, Inc." with the Maryland State Department of Assessments and Taxation. The Articles of Incorporation for the aforementioned business designated ARISTIDE as the incorporator and the director and listed 9821 Solar Course, North Laurel, MD 20723, as the location of his business.

13.  During the course of this investigation, AFOSI jointly worked with a travel voucher auditor for the United States Air Force Reserves. The audit revealed that according to the Joint Federal Travel Regulations (JFTR), ARISTIDE would not be entitled to lodging, per diem, and travel expenses if a resident of Maryland.  By claiming he lived at 7 Nostrand Place,



Hempstead, NY, ARISTIDE received approximately $22,614 in entitlements during his time at DLA between August 5, 2013 and December 20, 2013.

14. ARISTIDE was interviewed by AFOSI on July 17, 2014. During the interview he confirmed that he purchased a home in Maryland, registered as a Maryland resident in order to vote, and used his Maryland residence as an authorized telework site while employed by OPM. ARISTIDE could not explain why he retained 7 Nostrand Place, Hempstead, NY while on orders to DLA.

15. ARISTIDE also stated during the interview that his cellular telephone ("target cell phone") had thirty-two 32 gigabytes of memory.

16. Your affiant knows that iPhone cellular telephones are known to have built-in Global Positioning System (GPS) receivers that store Exchangeable Image File Format ("Exif") data when a photographic image is taken. Exif is a standard that specifies the formats for images, sound, and ancillary tags used by digital cameras to include smartphones. The storing of GPS information within the Exif is commonly referred to as "geotagging." Geotagging is done by assigning a latitude and longitude to a photographic image. Many smartphones like the iPhone automatically "geotag" their photos by default. Thirty-two (32) gigabytes of memory could store thousands of images containing latitudinal and longitudinal information.

17. Additionally, in my training and experience, I have learned that **AT&T** Mobility is a company that provides cellular telephone access to the general public. AT&T Corporation manages records for AT&T Mobility. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of current and historical information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-



site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e. antenna towers covering specific geographical areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e. faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from the device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18.     Based on my experience, I know that **AT&T** can collect historical cell-site data about the Target Cell Phone which list cellular tower sites used to make or receive calls by ARISTIDE during August 5, 2013 through December 20, 2013.

## CONCLUSION

19     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(c)(1)(A), by using the warrant to require **AT&T** to disclose to the government copies of the records and other information (excluding the content of communications) particularly described ~~in~~         Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in         of Attachment B.



## CONCLUSION

20. Based on the forgoing, I request that the Court issue the proposed search warrant.

21. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Jesse Argueta,
Special Agent, AFOSI

Sworn to and subscribed before me in Greenbelt, Maryland, this 6th day of August, 2014.

_____
William Connelly, United States Magistrate Judge

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the cellular telephone assigned call number (301)312-1264, with International Mobile Subscriber Identity Number **013333009183120** (the "Target Cell Phone"), whose wireless service provider is AT&T Mobility, a company headquartered at 208 South Akard Street, Dallas, TX 75202, and with AT&T as its National Subpoena/Search Warrant Compliance Center at 11760 US Highway 1, North Palm Beach, FL 33408.

## ATTACHMENT B

### Particular Things to be Seized

All information (not including the contents of communications) about the historical location of the Target Cell Phone described in Attachment A **between August 1, 2013 and January 1, 2014**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Historical Location Information") is within the possession, custody, or control of **AT&T**, **AT&T** is required to disclose the Historical Location Information to the government. In addition, **AT&T** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Historical Location Information unobtrusively and with a minimum of interference with **AT&T's** services, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.